## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOSHUA TUTTLE, # 602050,

                Petitioner,                CASE NO. 10-cv-11238

v.                                      HONORABLE GERALD E. ROSEN

KENNETH ROMANOWSKI,

                Respondent.

_____/

## OPINION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING
## TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING
## AN APPLICATION FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

This is a habeas case filed under 28 U.S.C. § 2254. Petitioner Joshua Tuttle is a state inmate currently incarcerated at Michigan Reformatory in Ionia, Michigan. In 2008, he was convicted, after his no-contest plea in Macomb County Circuit Court, of two counts of assault on a prison employee, MICH. COMP. LAWS § 750.197CA. He was sentenced to twenty-eight to sixty months in prison, to be served consecutively to the sentence for which he was already imprisoned at the time of the offense. In his *pro se* pleadings, Petitioner alleges that his no-contest plea was invalid because it was not voluntary and knowing. For the reasons stated below, the Court denies the petition. The Court also declines to issue Petitioner a certificate of appealability and denies him an application for leave to proceed on appeal *in forma pauperis*.

### I.

On January 28, 2008, the date of Petitioner's original plea, he pleaded no contest to the above-stated charges. At that time, he advised the trial court that he was taking mental-health medication but felt good. Petitioner's no-contest plea stems from the following incident.

> Corrections Officer Jenkins was assisting Sergeant Crawford, Corrections Officer[s] Snediker (phonetic) and Owens in escorting the suspect from Unit 5 to segregation. When they reached the outside of the Unit 5's front door[,] Tuttle immediately went to the ground and refused to get up. According to the written statement, Corrections Officer Jenkins applied wrist locks in an effort to raise Tuttle to his feet.
>
> * * *
>
> When Tuttle stood up he spat in Correction[s] Officer Jenkins['s] facial area, striking him in the corner of the right eye.
>
> * * *
>
> Tuttle stood up and spit into the faces of both Correction[s] Officer[s] Jenkins and Owens, and several eyewitness['] reports state Tuttle indicated that he was going to kill them all.

Sentencing Hr'g Tr. 13-14, Apr. 30, 2008.

The trial court took Petitioner's no-contest plea under advisement.

Then, on March 6, 2008, Petitioner filed a motion to withdraw his no-contest plea and asked to proceed with trial. The trial court granted his request.

Subsequently, at the final pre-trial conference, on April 30, 2008, Petitioner requested that his no-contest plea be reinstated. The trial court again granted his request. The original plea agreement was reinstated and Petitioner was sentenced accordingly.

Following his convictions and sentence, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, raising the same claim raised in this habeas petition. The Court of Appeals affirmed his convictions in a May 27, 2009, order stating that his delayed application was denied for "lack of merit in the grounds presented." *People v. Tuttle*, No. 291797 (Mich.Ct.App. May 27, 2009). Petitioner subsequently filed an application for leave to appeal the Court of Appeals' decision with the Michigan Supreme Court, again raising the same claim. On September 28, 2009, the Michigan Supreme Court denied the application in a standard order. *People v. Tuttle*, 485 Mich. 898, 772 N.W.2d 425 (2009).

2

II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this

Court's habeas-corpus review of state-court decisions.  Petitioner is entitled to the writ of habeas

corpus if he can show that the state court's adjudication of his claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  A state court's

decision is an "unreasonable application of" clearly established federal law "if the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application

of federal law."  *Williams*, 529 U.S. at 410 (emphasis in original).  "[A] federal habeas court

making the 'unreasonable application' inquiry should ask whether the state court's application of

clearly established federal law is objectively unreasonable."  *Id.* at 409.  "Furthermore, state

findings of fact are presumed to be correct unless the defendant can rebut the presumption by

clear and convincing evidence."  *Baze v. Parker*, 371 F.2d 310, 318 (6th Cir. 2004) (citing 28

U.S.C. § 2254(e)(1)).

III.

In his habeas claim, Petitioner argues that his no-contest plea was not knowingly or voluntarily given.  Further, he alleges that he was incompetent at the time his plea was taken on January 28, 2008, as well as when it was reinstated on April 30, 2008, because of his mental disabilities.

A guilty or no-contest plea is a waiver of certain constitutional rights and, therefore, must be a knowing, voluntary, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences."  *Brady v. United States*, 397 U.S. 742, 748 (1970) (footnote omitted).  Specifically, the United States Supreme Court has stated:

> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving [], or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.  Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.

*Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976) (citations omitted).

"A criminal defendant may not be tried unless he [or she] is competent."  *Pate v. Robinson*, 383 U.S. 375, 378 (1966).  "[A]nd he may not [] or plead guilty unless he does so 'competently and intelligently.'"  *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)).  The standard for competency to stand trial is "(1) 'whether' the defendant has 'a rational as well as factual understanding of the proceedings against him' and (2) whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'"  *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (emphasis omitted) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).  In

4

other words, "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). The same standard applies to competency to plead guilty, *Godinez*, 509 U.S. at 391 (competency standard for pleading guilty or waiving the right to counsel is the same as the competency standard for standing trial), and, by logical extension, to competency to plead no contest.

Nevertheless, "not every mental illness demonstrates incompetence to stand trial." *Rever v. Acevedo*, 590 F.3d 533, 538 (7th Cir. 2010) (citing *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996)). "[R]ather the evidence must indicate a present inability to assist counsel or understand the charge." *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir. 1984). "The burden on the petitioner seeking federal habeas relief on the grounds of incompetency is heavy." *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992). "'Courts in habeas[-]corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner.'" *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir. 1979) (quoting *Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973)). A state court's factual conclusion regarding competency is presumed correct and the applicant has the burden of rebutting the presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (trial court's conclusion as to competency is a factual one).

5

While Petitioner requests that this Court grant him relief because of his alleged mental disorders, he fails to disclose any information about how those alleged disorders would have prevented him from understanding the proceedings when they took place. Rather, he simply makes bald assertions that the plea was invalid because he allegedly suffered from mental disorders. Thus, the Court finds that Petitioner has failed to demonstrate that he was not competent when he pleaded no-contest at the time of the original plea in January 2008 or when he requested that the plea be reinstated in April 2008.

Furthermore, to the extent Petitioner argues that the reinstatement of his plea or the initial plea itself were not knowing or voluntary, his claims are without merit.

A guilty plea is more than a confession; it is a conviction that leaves only the need for sentencing. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). As the Supreme Court explained in *Brady*, the decision to plead guilty is heavily influenced by a defendant's appraisal of the prosecution's case and the apparent likelihood of securing leniency by pleading guilty. *Brady*, 397 U.S. at 756. Therefore, "[t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision" and further, a defendant is not entitled to withdraw the plea "merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Id.* at 757. Rather, absent misrepresentation or other impermissible conduct by state agents, "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Id.*

6

First, to the extent Petitioner challenges the trial court's reinstatement of the original plea at the hearing held on April 30, 2008, he is not entitled to relief. Petitioner fails to make any reference to the sentencing transcript to clarify that he did not fully understand the advice of his counsel or the statements made by the trial judge. In fact, Petitioner himself stated three times, in succession, that he wanted the plea to be reinstated.

> THE COURT: You want me to reinstate your plea?
> [PETITIONER]: Yes, ma'am.
> THE COURT: Grant your request to reinstate your prior plea?
> [PETITIONER]: Yes, ma'am.
> THE COURT: And accept the plea?
> [PETITIONER]: Yes, ma'am.

Sentencing Hr'g Tr. 4, April 30, 2008.

Petitioner provides no support from the record that would indicate he did not want the original plea reinstated or that he did not fully understand the nature of the proceedings against him. In fact, when the trial court asked defense counsel if he wanted the court to go through the plea again, defense counsel declined, noting that it was not necessary. When the trial court asked if Petitioner had anything further to add, he did not protest to the sentencing, he merely requested that the trial court order his father to visit him in prison.

In his habeas petition, Petitioner states that the trial court should have ordered a psychological evaluation prior to reinstating the plea and issuing his sentence. However, Petitioner never requested a new psychological evaluation, most likely because he was

previously evaluated and a report was issued in December 2007, a few months prior to sentencing in this matter.

In the report, Dr. George Watson, of the Department of Community Health's Center for

Forensic Psychiatry, stated that he found Petitioner to be "manipulative and disingenuous"

during his clinical interview.  Dr. Watson stated further:

> [Petitioner] was oriented and his verbal intellectual functioning appeared to be at
> least in the high borderline range despite his ingenuous responses to formal
> mental status questions and inconsistent claims of illiteracy.  [Petitioner] reported
> anxiety, dysphoria, sleep disturbance, attenuated appetite, conditional suicidal
> ideation and homicidal threats.  The diagnostic impression is that of an individual,
> who is primarily personality disordered and who does not display acute symptoms
> of mental illness at this time.
>
> * * *
>
> Although [Petitioner] did not participate candidly in responding to questions
> intended to assess his verbal intellectual functioning, collateral observations
> suggested that he does not have a developmental intellectual impairment of the
> severity of Mental Retardation.

Dep't of Com'ty Mental Heath Report, 4-5, Dec. 18, 2007.

To support his argument that the reinstatement of his plea was not knowing and

voluntary, and also to counter the findings of Dr. Watson, Petitioner provided this Court with a

psychological assessment report by Dr. Scott W. Trylch.  However, the report, which was based

on an assessment done in January-February 2006, does not establish in any way that Petitioner

involuntarily or unknowingly pleaded no contest over two years later to two counts of assault on

a prison employee.  In fact, Petitioner provides no evidence to support his claim that the

reinstatement of his plea was done involuntarily or unknowingly, especially where defense

counsel specifically told the trial court that Petitioner wanted his plea reinstated.

For the reasons stated, the Court concludes that Petitioner has failed to demonstrate that

his alleged mental illnesses impaired his judgment so much that his request to reinstate his

original no-contest plea was unknowing or involuntary.

Second, even if this Court were to interpret Petitioner's claim as a challenge to the plea

8

when it was originally taken on January 28, 2008, he is not entitled to relief because the plea was

clearly knowing and voluntary.  In fact, the trial court took great care to make sure the plea was

properly understood and voluntary.  The following colloquy took place at the plea hearing:

>THE COURT:  You understand that you have a Constitutional Right to remain silent?
>[PETITIONER]:  Yes.
>THE COURT:  It's my understanding that you wish to waive that right for the purpose of pleading to the charge set forth in the information, is that correct?
>[PETITIONER]:  Yes, ma'am.
>THE COURT:  Sir, how are you pleading to the charges in count one, assault of a prison employee?
>[PETITIONER]:  No contents. [sic]
>THE COURT:  And how are you pleading to the charges in count two, assault of a prison employee?
>[PETITIONER]:  No content. [sic]
>THE COURT:  No content or no contest?
>[PETITIONER]:  No contest.
>THE COURT:  No contest.  How old are you?
>[PETITIONER]:  I'm 30 years old, ma'am.
>THE COURT:  How far have you gone in school?
>[PETITIONER]:  Eleventh grade with Special Ed.
>
>* * *
>
>THE COURT:  Are you, at this time, under the influence of any medication, drugs or alcoholic beverages - -
>[PETITIONER]:  I'm only on - -
>THE COURT:  right now?
>[PETITIONER]:  - - a mental health medicine right now.  It's Paxil.
>THE COURT:  How long have you been on the Paxil?
>[PETITIONER]:  Just a few weeks.  I just got back on it since I've been in jail here.
>* * *
>
>THE COURT:  How do you feel right now?
>[PETITIONER]:  I feel good, ma'am.
>
>* * *
>
>THE COURT:  Counsel, do you want to voir dire your client anymore [sic] regarding the medication that he's on?

[DEFENSE COUNSEL]:  You're currently on medication, Paxil, correct?
[PETITIONER]:  Yes.
[DEFENSE COUNSEL]:  Okay. And that doesn't affect your ability to understand the judge and understand me today?
[PETITIONER]:  No.
[DEFENSE COUNSEL]:  Okay.  And you read, write and understand the English language?
[PETITIONER]:  Yes.
[DEFENSE COUNSEL]:  Okay. And you don't have any problem or confusion where the medication is making you confused today so that you don't understand?
[PETITIONER]:  No.
[DEFENSE COUNSEL]:  Is that correct?
[PETITIONER]:  That's correct.
[DEFENSE COUNSEL]:  Okay.
THE COURT:  And the record should reflect that [Petitioner] is answering appropriately in terms of the questions and answers, the time frame, and his affect, as far as I'm concerned, appears to be normal.
[DEFENSE COUNSEL]:  Judge, just - - there was a referral to the Forensic Center, and we do have those reports back.
THE COURT:  Okay.
[DEFENSE COUNSEL]:  It did come back that he is competent to stand trial and that he is not criminally responsible, but does understand the charges against him. He's found not to be mentally retarded or clinically insane that he would not be able to understand the charges against him.

* * *

THE COURT:  Do you understand that you the right to have an attorney represent you at all proceedings, including the trial, the sentence and the appeal?
[PETITIONER]:  Yes, ma'am.
THE COURT:  And do you understand that if you could not afford an attorney the Court would appoint an attorney for you.
[PETITIONER]:  Yes, ma'am.
[DEFENSE COUNSEL]:  Have we discussed the matter?
[PETITIONER]:  Yeah.
[DEFENSE COUNSEL]:  Okay.
[PETITIONER]:  Yes, ma'am.
THE COURT:  Are you satisfied with his advice and services?
[PETITIONER]:  Yes, ma'am.
THE COURT:  Do you understand that if I accept your plea of no contest that you would be waiving certain rights?
[PETITIONER]:  Yes, ma'am.
THE COURT:  Specifically, do you understand that you would be waiving your right to a trial and any other rights that you would have at the time of trial?

10

[PETITIONER]:  Yes, ma'am.
THE COURT:  The rights that you would have at trial are contained in the Advice of Rights form.  Has Mr. Marshall read that to you?
[PETITIONER]:  Yes, ma'am.
THE COURT:  Do you understand and wish to waive those rights?

\* \* \*

[PETITIONER]:  Yes, ma'am.
THE COURT:  And that's what you want to do?
[PETITIONER]:  Yes, ma'am.
THE COURT:  And did you sign that document in the lower right hand corner acknowledging that?
[PETITIONER]:  Yes, ma'am.
THE COURT:  You're now entering a plea of no contest to the charges in count one and two because it's your choice to plead no contest, is that correct?
[PETITIONER]:  Yes, ma'am.
THE COURT:  Has your attorney explained to you the nature of the charges to your satisfaction?
[PETITIONER]:  Yes, ma'am.
THE COURT:  Do you understand that the maximum sentence the Court can impose on each count is up to five years in prison and/or a $2,500.00 fine?
[PETITIONER]:  Yes, ma'am.
THE COURT:  It is my understanding that the full agreement between the parties is in exchange for [Petitioner]'s plea of no contest to count one and two the People will move to dismiss the habitual second at the time of sentencing, and I'm taking the plea under advisement?
[PROSECUTOR]:  That's correct, Judge.
[DEFENSE COUNSEL]:  That is correct, your Honor.
THE COURT:  [Petitioner], is that your understanding of the full agreement today?
[PETITIONER]:  Yes, ma'am.

THE COURT:  Sir, have you been promised by this Court, the prosecutor or your attorney that you would be placed on probation or that you would receive any other special sentence in return for pleading no contest?
[PETITIONER]:  No, ma'am.
THE COURT:  Has anybody tried to force you to plea [sic] no contest by any mistreatment or pressure or duress?
[PETITIONER]:  No, ma'am.
THE COURT:  Have you been promised that the Court would go easy on you or be lenient if you plead no contest?
[PETITIONER]:  No, ma'am.
THE COURT:  And except for what's already been stated, have any promises of

any kind been made to you to induce you to plead no contest?

[PETITIONER]: Yes, ma'am, I understand that.

THE COURT: Has anybody promised you anything in order to get you to plead no contest?

[PETITIONER]: No, ma'am.

THE COURT: Are you therefore pleading no contest freely and voluntarily, because it is your choice to plead no contest?

[PETITIONER]: Yes, ma'am.

THE COURT: Do you understand that if I accept your plea of no contest and you decide you want to appeal, it's only an Application for Leave to Appeal to the Court of Appeals, it's not as a matter of right?

[PETITIONER]: Yes, ma'am.

* * *

THE COURT: Mr. Marshall, for purposes of the factual basis, are you satisfied with the excerpts from the Michigan State Police report read into the record?

[DEFENSE COUNSEL]: I am satisfied, your Honor.

* * *

THE COURT: [Petitioner], do you understand that if I accept your plea you're giving up any claim that this plea was the result of promises or threats that you did not tell me about? You can't come back at a later date and say you were promised or threatened something today to get you to plead guilty.

[PETITIONER]: I know, ma'am.

THE COURT: Okay. Do you also understand that even though you're pleading no contest, for purposes of - - for purposes of sentencing the Court treats the no contest plea as a guilty plea?

[PETITIONER]: Yes, ma'am, I understand.

* * *

THE COURT: [Petitioner], lastly, do you understand that if I accept your plea you're giving up any claim that it was not your choice to enter into this plea agreement?

[PETITIONER]: Yes, ma'am, I understand.

* * *

THE COURT: [Petitioner], do you have any questions about anything that I've asked you this afternoon?

[PETITIONER]: No, ma'am. I understand.

THE COURT: The Court finds that [Petitioner]'s plea is knowing, freely and

> voluntarily made.  The Court also finds that the elements of the offenses to which
> the Defendant has pled no contest to have been made out by the excerpts from the
> Michigan State Police report that were read into the record.  And [Petitioner]'s
> plea of no contest to count one and two is hereby taken under advisement.

Plea Hr'g Tr. 5-16, Jan. 28, 2008.

A review of the record clearly demonstrates that the trial court went to extraordinary lengths to make sure that Petitioner knew what he was doing by entering a plea and was doing it voluntarily.  The record further shows that Petitioner's previous claims of mental impairment were dispelled by a psychiatric evaluation done  shortly before the plea hearing, but being aware of Petitioner's previous claims, the trial judge took pains to answer all of Petitioner's questions and that the answers given were understood by Petitioner.

Against that backdrop, the Court finds that Petitioner's plea was knowing and voluntary. Accordingly, he is not entitled to habeas relief.

### IV.

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.  28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits

13

review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court concludes that jurists of reason would not find the Court's assessment of the constitutional claims debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability. The Court also denies Petitioner an application for leave to proceed on appeal *in forma pauperis*, because the appeal would be frivolous. *Allen v. Stovall*, 156 F.Supp.2d 791, 798 (E.D. Mich. 2001).

For the reasons stated, **IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" [Dkt. # 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue Petitioner a certificate of appealability.

**IT IS FURTHER ORDERED** that any application for leave to appeal *in forma pauperis* is **DENIED**.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  January 24, 2011



I hereby certify that a copy of the foregoing document was served upon counsel of record on January 24, 2011, by electronic mail and upon Joshua Tuttle, #602050, Michigan Reformatory (RMI), 1342 W. Main, Ionia, MI   48846 by ordinary mail.

s/Ruth A. Gunther
Case Manager

14